The next case on our counsel is within the bankruptcy of In Re 21st Century Oncology Holdings and within that bankruptcy the case before us is Andrew Woods versus 21st Century Oncology Holdings counsel. May it please the court, my name is Leon Patricius and I represent the appellant Andrew Woods. Your Honor, this case turns on the court's interpretation of Section 502 B7b of the Bankruptcy Code. Mr. Woods is respectfully requesting that this court protect earned deferred income from being reduced by a statutory cap that was never meant to apply to earned deferred income but is instead meant to cut off large severance payments that compensate executives for future earnings that have been lost due to termination. The basic facts of this case are very simple. Mr. Woods had a written employment agreement that had incentive bonus clauses in them that could be earned during the term of his employment. Per paragraph 3b of his employment agreement, Mr. Woods quote, shall be entitled to receive the following incentive bonuses, end quote. It is stipulated in this case that he earned those incentive bonuses. Doesn't it require acceleration to get the amount you're seeking? Your Honor, the incentive bonus is a distinction in the executive compensation agreement that merely accelerates the payments, not the earnings. In other words, there's a distinction in this agreement and it's an important distinction between what the word acceleration means and the use of the word acceleration in the statute. It's undisputed that Mr. Woods performed what he needed to do, which is to get the events before Congress passed to earn the bonus. He earned the bonus, the ten million dollars of bonuses. That's not disputed. The company and Mr. Woods decided that he could defer. He could defer and they could defer payment of those bonuses over a five-year period. So the only thing that is accelerated would be the payment of the bonus, not the earning. But Mr. Patricios, it's clear that he performed the lobbying activities that and got the results that were contemplated by the agreement. Nonetheless, it seems to me a little bit more complicated than saying that he earned them straight out in that, as the district court pointed out, there were conditions subsequent that were closely intertwined with the payment obligation of the company, which included him staying on at the company for five years to receive measured payouts, as well as executing a release following the termination of his employment. And those seem kind of substantial and not, you know, his continued services, not going to a competitor, in effect a non-compete. It was a multifactorial relationship and I don't see how, in the language of Section 502 of the Bankruptcy Code, it's fairly broad about the looking for damages related to the termination of employment and where the cap applies. So it seems to me it's not quite so simple as you've said, discounting entirely the two conditions subsequent. Can you tell me where I'm wrong? Am I thinking about that? Yes, Judge. I completely agree with you that this is complicated. I don't disagree, Your Honor, Judge Carney, at all that this is not complex and it's not the easiest thing to follow. But let me start with the following. 21st Century booked the liability. They booked five million and paid him one million. That's part of the bonus. They didn't book the other due to a factual dispute that's not relevant here. But when they did that, Your Honor, they exhibited the notion that this was, they proved that this was earned. They booked it and paid part of it, meaning that he... Let me interrupt for just a second, though. I mean, we could start looking at kind of tax treatment and tax consequences. It might have been useful to both of them to have different accounting treatments for this payment. But really what we're looking at is how to interpret the section of the Bankruptcy Code, which is looking to impose a kind of equitable solution to, in the context of penalties or elements that have penalty elements in the landlord-tenant context. And so I'm not sure that the fact that the company treated this as an accounting matter necessarily shows that it was earned and excused from treatment under the cap. Why am I wrong in having that concern? Let me address that, Judge, and we'll address the statutory language. The section allows unpaid compensation due under such contract, comma, without acceleration. That's what it allows. What it forbids is bringing future obligations to the present. In other words, it says unpaid compensation due under the contract without acceleration. What it is forbidding is bringing future obligations to the present because the statute does not contain the to be an allowed amount. The phrase without acceleration does not refer to bringing past obligations to the present because employees are allowed to be paid past due amounts. What's the example of that? Accrued, earned, unpaid vacation. An employee may have eight weeks of accrued, unpaid vacation but is only allowed to take two weeks a year. Just like Mr. Woods is only getting a portion of his bonus paid a year. If that employee is terminated, there is no dispute that she can get all of her accrued, i.e. earned, unpaid vacation. It, in a sense, is being accelerated now because of the termination and she could only take two weeks a year. But what the phrase without acceleration is doing is saying do not accelerate from the future to bring a future obligation to the present. Do not apply that phrase, we would ask your honors, to forbid bringing past obligations to the present that have been earned. And I think, your honor, that is why the release itself is also, which you mentioned earlier, not a factor. If a release was important, they wouldn't have paid him the million dollars. He didn't sign a release to get the million dollars that he first got. He didn't sign a release when they booked the four million in their books. The release, yes, was incidentally relevant because it came up in certain types of triggering events for an acceleration such as school. Did he actually sign a release? He did not, your honor. What happened was when he was terminated, he sent in the release with some changes to preserve his bonuses that had not been paid. He sort of put a few red lines in there, said, listen guys, you haven't paid me my bonuses. Here's a few red lines on the release. Let's agree to this form of the release because I haven't been paid my bonuses. And instead of getting a response, they sent him a letter through counsel saying you now have been terminated with cause. You're not entitled to any more money. So within the 60-day period he had to sign a release, it was mooted because they told him he was not going to get a penny. And they didn't even talk to him about modifying the release. But the release, your honor, is a fallacy such as the condition that he stayed working. He could have been disabled the day after Congress passed this bill, or he could have passed away the day after Congress passed the bill, and he would have been entitled to the full bonus under his work the five years, or terminated for either with cause, or with reason I guess is the contract term, or without reason. Weren't there circumstances in which he was no longer going to be entitled to collect the remaining unpaid portions of the incentive bonuses? Yes, Judge Carney, under the employment agreement there was a forfeiture provision, and that is not uncommon with earned income. One can forfeit retirement benefits if you violate a covenant not to compete, for example. One can forfeit things that have been earned. And yes, there was a provision, your honor is correct, that if Mr. Woods was terminated for cause, which is eventually what they converted their termination without cause to, if he was terminated with cause, he would forfeit, he would lose his entitlement to that payout. And that's really how we got to where we were because that's what they Why wouldn't one say that all these years of income were accelerated only because he was terminated without cause, and that therefore this payment was prospective relative to his time of employment. So during his time of employment, he did not have an entitlement to get it immediately, and settlement is usually, I think, would usually be deemed to be something that is an acceleration. The reason I disagree with you, Judge, is because there were many instances in the employment agreement where Mr. Woods was entitled to the money immediately, upon death, upon disability, upon a change of control, upon a sale of the company. It was, he did not necessarily have to wait the five years to get the bonus, nor did he necessarily have to be terminated or leave with cause to get the five years. He did have a severance provision, Your Honor. This is not in the nature of severance because he had a severance provision. There is a severance... More than one provision dealing with severance. You can have a provision that deals with future medical expenses, you can have a provision dealing with all sorts of other benefits that you get in the future after you retire. You can, and he did. He had all of those things, and that's why this is not severance. They specifically dealt with severance separately, and we're not appealing the judge's ruling with regard to limiting Mr. Woods's severance. What we're appealing is that there was an earned bonus that was not triggered by his termination, and, Your Honor, that's the second reason we think there's an error here. The statute only applies to contracts that are, the damages that come out of a termination or resulting from the termination of an employment contract, and Inrie Lavelle, which we cited in our papers, says whether damages, quote, result from a termination, end quote, largely depends upon the triggering mechanism for the commencement, the commencement of the employer's payment obligation. The commencement of the employer's payment obligation was Mr. Woods performing, performance under the contract, which he did, and they started to pay Mr. Woods in and the booking, and this is why I go back to the accounting, Your Honor. It does tie to his agreement, and it does tie to the law that we believe allows an employee to get past earned compensation paid without the cap. We know it's past earned compensation because of the fact that they started to pay it, and they booked it, the full amount. They booked the full amount of the five million dollar bonus, which was the one not in dispute, and so, Your Honor, when Mr. Woods performed, that was the trigger for the payment of the money, not his termination. Yes, the lawsuit resulted out of his termination, and the lawsuit brought us to where we are today before, Your Honors, but the triggering event that entitled Mr. Woods to the money was not the termination of his employment agreement because he was being paid these funds during the term of his employment agreement, and so here, this obligation to Mr. Woods and the consequent damaging associated with not paying him did not come from the termination, which is key under the contract. Your Honor, what we would ask... You can finish your sentence, but your time has expired. I would finish, Your Honor, that we would ask that the court reverse the decision of the District Court of the Bankruptcy Court that 502B is applicable to the incentive bonuses and remand for further proceedings. Thank you. Thank you, counsel. You have one minute for a rebuttal. We'll hear from 21st Century. Okay, good morning, Your Honors. Jeffrey Gleit, Sullivan & Wooster on behalf of the Appellee 21C for 21st Century Oncology. Your Honor, 11UFC 502B-7 was designed to protect against high-level executives receiving exorbitant distributions in the Chapter 11 case to the detriment of lower-level employees and the company's creditors. All 21st Century Oncology is doing, both the District Court and the Bankruptcy Court agreed with, is properly enforcing this bankruptcy code provision in accordance with its fiduciary duty to all creditors and the bankruptcy estate. In my view, the case is simple and the answer is in Mr. Woods' employment contract. The bonuses at issue are set forth in Section 3B and are payable over a five-year period. Payments of these bonuses shall be quote-unquote accelerated upon a termination without cause. Mr. Gleit, Judge Carney, I have a question for you. So we'll look at the language of the of the contract, but what struck me was that there was really nothing more that Mr. Woods had to do to earn the bonuses. The contract sets out that he needed to limit or stop the reduction in Medicare reimbursements, achieve a package that would reconfigure the Medicare reimbursement plan by CMS, and have the company elect to participate. All those things happened in 2015 and he stayed on thereafter. There was nothing further for him to do. He's supposed to accommodate a payout schedule, which frankly could have resulted from negotiating about tax consequences to minimize tax consequences to his receipt of these payments, but his task had been completed and these conditions subsequent seem really relatively minor and ministerial. The task had been completed and so I have some sympathy for your opponent's argument that the activity had been completed, the earning was done. This was not payment for future activity. This was not in the nature of a severance to ease the blow of a transition to a new employer. This was just a payment schedule for achieved goals. And so why am I incorrect in perceiving it that way? The reason being, Your Honor, is in our view he was required to actually work the additional five years. I mean this was a highly compensated employee who negotiated a contract with the CEO of a company with very exorbitant bonuses and in order to get those bonuses it wasn't just the achievement of the conditions. They were agreed to by the company. The company, I don't know the particulars of its bankruptcy filing, but this is a remunerative operation of providing radiation services and being compensated by the federal government under Medicare and other provisions. But also in the contract it was negotiated that they would be paid over five years for continued services with the company and that was very important to the company. And that's why if he was terminated without cause, it allowed him to accelerate upon execution of a release. However, if he just left the company, he was not going to be paid these bonuses. So there was two parts. It was to achieve success on those bonus conditions, but it was to provide services for ten years. Counsel, this is Judge Pooler. Opposing counsel said that the lobbying goals, is that correct? Yes and that's like a cash flow management way of budgeting and projecting into the future. So that is correct. So why wasn't that earned if it was booked? Because it wasn't payable until he provided the services over the five years. But he provided the services in the beginning of the five years and accomplished the goal. So is he punished for being so efficient that he did this early on in the five years? He was required over the five years to provide lobbying services, continued lobbying services, beyond those provisions, beyond those requirements set forth in Section 3B. There was also an amendment to his agreement where he was to provide legal services to the company for those five years. All of those conditions and those requirements are embodied in this agreement. All right, continue. Just let me, sorry I'm working with a laptop that went out, but give me one second. Well, look, the difference between retirement benefits, which is what the Gein-Misler case looks at and some of the other cases cited too, there are those type of benefits and those type of payments cannot be lost. In our situation he had the ability to walk away from the company either without good cause or to be fired for cause and would forfeit these benefits. The only reason he was entitled to those payments at the time, which was pre-bankruptcy, was because it was, it would have been based on the acceleration provision. When you say that his leaving without cause would cause a forfeiture, you're impliedly suggesting that he had earned it and was already entitled to it. Forfeiture is the giving up of a thing that you already... Yes, but if you look at 5As of the agreement, they use the term the executive shall also receive any non- forfeitable benefits already earned, and it talks about base salary, and that's a definition of accrued compensation under the agreement. If you then look at Section 3B of the agreement, accrued compensation and any deferred payment, payments of performance incentive bonuses pursuant to Section 3B. So the agreement itself carved it out from the definition of accrued compensation, which would include those non-forfeitable benefits. If it was intended to be like a true forfeit and truly earned, that's where it would have been written in 5A, not excluded in 5B. And that's really the key to the case here. This agreement was drafted by Mr. Wood's counsel, not by the company's counsel. Yeah, well I'm not sure we have findings on that. Perhaps we do, but you're saying the fact that it was forfeitable is helpful to your case rather than otherwise. What I'm saying is, I'm tracking the language in the agreement. So in some sections they'll say it's forfeitable, in other sections they'll say there are non-forfeitable benefits, and specifically it's 5A. So it's base salary and non-forfeitable benefits or accrued compensation, where he is terminated without cause, he gets to pay that money. The bonuses in 3B are akin to a severance payment, because what they're requiring is early termination and a release. And there's numerous bankruptcy cases out there which look at 502b7 and you don't need it to be defined as severance in order for the cat to apply. It's any compensation from the termination of an employment agreement. It results in acceleration. And one of your honors had asked Mr. Patricios if he had signed that release pre-bankruptcy, would he have been, had earned it then. If you look at the CPT case and some of the other cases that have been cited, so long as the person is terminated, even if it's like a year prior to the bankruptcy, the statute applies. All that you need is an accelerated payment. So no matter when the, but there's a year after the termination that is still honored, it's for payments subsequent to that, is that right? Correct, yes. Yeah, yeah. Yeah, it's really, it's a prospective cap and it's quite common to see it in a bankruptcy. I'm a pure bankruptcy lawyer so I'm used to these type of caps. Could you please tell me, this is Judge Carney, could you tell us please the status of the bankruptcy proceedings? The bankruptcy, well so the bankruptcy case is basically closed. It was reopened because Mr. Woods is suing some former officers and directors over the termination of his employment and the company's reimbursing, so that's the only open matter. Otherwise, all distributions have been made except for the distribution to Mr. Woods, which has been reserved pending Your Honor's ruling. Thank you. Thank you. Your time has expired. We will go to Mr. Petrichio who has one minute for rebuttal. Your Honor, as you consider these case, this case, I ask that you look at the constellation of facts applicable here and not labels placed by lawyers in such as the word accelerated. And I'll refer you to two cases that I think illustrate the danger of deciding these types of cases on labels rather than constellation of facts. We cited the in recent Cincinnati courtage and paper case to Your Honors in which some executives labeled something a retirement benefit, but that retirement benefit arose from two years of employment. Similar to Mr. Woods, he earned the bonus while he was there. These executives earned their quote-unquote retirement benefits by working for two years. And the court did not cap those quote-unquote retirement benefits because had been earned during the term of their employment, not because they were retirement benefits. Judge Drain also cited the Newman versus Bank of New England court case, which nobody cited to Your Honors. I'm just going to give you the site 187 BR 405. In that case, an enterprising lawyer deemed what was really severance quote-unquote a signing bonus. A signing bonus. Now everybody would think a signing bonus is earned upon signing, but the court saw through it and deemed it to be an attempt at securing a severance. And so the court in the Newman case did not apply the label of signing bonus and deemed it to be severance, which was not recoverable. We would ask that Your Honors do the same here and find that Mr. Woods earned his bonuses. They were vested. They were earned, otherwise there wouldn't have been a release needed, as Your Honors have pointed out. And we ask that you remand for further proceedings. Thank you. Thank you, counsel. Thank you both. We'll resume decision. All right. Thank you.